UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FUNDS IN THE AMOUNT OF APPROXIMATELY $7,783,466.43 SEIZED FROM JPMORGAN CHASE BANK ACCOUNT IN THE NAME OF RT PCR NEAR ME INC. ACCOUNT NUMBER XXXXX9331; | ) ) ) ) ) ) ) |
| | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR FORFEITURE**

The UNITED STATES OF AMERICA, by MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant property, alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

**Nature of the Action**

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This complaint is verified by the attached Verification of Travis L. Fannin, Federal Bureau of Investigation ("FBI") Special Agent ("SA Fannin"), which is fully incorporated herein.

## The Defendant *in rem*

4. The defendant *in rem* consists of the following property:

> (a) Funds in the amount of approximately $7,783,466.43 seized from JPMorgan Chase Bank account in the name of RT PCR Test Near Me Inc. account number XXXXX9331 ("**Subject Account**").

5. The defendant property was seized on or about December 29, 2023.

6. The defendant property is currently in the custody of the United States Marshals Service.

## Jurisdiction and Venue

7. This Court has jurisdiction over an action commenced by the United States under Title 28, United States Code, Section 1345, and over an action for forfeiture under Title 28, United States Code, Section 1355(a).

8. This Court has *in rem* jurisdiction over the defendant property pursuant to Title 28, United States Code, Section 1355(b)(1)(A), because acts giving rise to this action occurred within the Northern District of Illinois.

9. Venue is proper in the Northern District of Illinois pursuant to Title 28, United States Code, Section 1395(b)(1)(A) because acts giving rise to this action occurred in this district.

**Statutory Basis for Forfeiture**

10. The defendant property is subject to forfeit pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), as property that constitutes and is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and/or 1347.

**Specific Allegations**

I. Background

    A. **RT PCR Test Near Me d/b/a Pro Diagnostics Lab Inc. ("Pro Diagnostics")**

11. According to information provided by the Illinois Secretary of State, RT PCR Test Near Me was incorporated on December 12, 2021, by Individual YA, its registered agent and incorporator. On or about May 11, 2022, it adopted the assumed corporate name of Pro Diagnostics Lab, according to an application signed by Individual MS, its president. On or about October 16, 2023, Illinois Secretary of State records indicate "FNU Abdul Wahed" ("Wahed") became the President, Secretary, and registered agent for Pro Diagnostics.

12. According to Medicare enrollment records, Pro Diagnostics is a registered provider with Medicare and is owned by Individual MS and Individual YA. Pro Diagnostics has two National Provider Identity ("NPI") numbers which share the same EIN and provider location. One NPI relates to claims for a clinical laboratory, the other to claims for a mass immunization laboratory. The registration associated with the mass immunization NPI registered a change in ownership on November 29, 2023, indicating Wahed is the new owner. The claims for Respiratory Pathogen Panel

3

Testing and Covid Genotype Analysis tests on December 6, 2023, and December 7, 2023, were submitted by Pro Diagnostics to Medicare under the clinical laboratory's NPI.

13. Pro Diagnostics submits claims to Medicare through a billing clearinghouse, Claim.MD. According to Claim.MD, Pro Diagnostics registered the company through Claim.MD's online portal on or about October 20, 2023. Only one individual, Wahed, is listed as a point of contact for the company.

14. Pro Diagnostics requests payment by Medicare through an Electronic Funds Transfer Agreement ("EFT"). The EFT indicates payment to Pro Diagnostics should be directed to the **Subject Account**. According to Chase Bank, account xxxxx9331 has one signatory, Wahed, who was designated as the sole signatory for the account on or about October 17, 2023.

### B. Medicare Program

15. Medicare is a federal health benefit program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services. Medicare is funded through individual payroll taxes, other taxes, and user fees. Medicare helps pay for the reasonable and necessary medical services for people aged 65 and older and some persons under 65 with certain illness and/or disabilities. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

16. Each Medicare beneficiary is identified with a unique beneficiary identifier number ("BIN"). These BINs are used, among other ways, to determine a

beneficiary's eligibility for Medicare benefits, and to submit claims to Medicare seeking reimbursement for covered benefits, items, and services.

17. Medicare, as well as private health care benefit programs are "health care benefit programs" as defined by Title 18, United States Code, Section 24(b), that is, a "public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual…" 18 U.S.C. § 24(b).

18. Medical providers and suppliers must obtain a National Provider Identifier ("NPI") before enrolling in Medicare. Health care providers seeking to become a Medicare provider must submit enrollment documentation to Medicare, which includes, among other things, contact information for the provider.

19. Every claim submitted by, or on behalf of, a physician or health care provider, includes an agreement by the provider to abide by Medicare's rules and regulations. As a condition of payment Medicare requires providers to certify all information on the claim is true, correct, and complete. Additionally, the provider certifies the service was rendered personally by the provider or under his/her direct supervision and incident to the provider's care and that the service was medically necessary for the health and/or well-being of the patient. Health care suppliers, like Pro Diagnostics, are paid by Medicare through the submission of claims. All Medicare providers are required to submit claims electronically. Those claims are processed through Baltimore, Maryland, and therefore they travel in interstate commerce. Medicare reimburses claims electronically, as well, and payments for Medicare Part A services in Illinois are issued from National Government Services, a Medicare

Administrative Contractor headquartered in Indianapolis, Indiana. Payments are made into a provider's bank account through an electronic funds transfer. Providers are also required to maintain all documents that substantiate Medicare claims for at least six years.

20. Until December 19, 2023, Pro Diagnostics was actively enrolled with Medicare. Therefore, at all relevant times pertaining to the billings and payments sought as described below, Pro Diagnostics was bound by the laws, rules, and regulations that govern Medicare.

21. As of December 19, 2023, Medicare suspended Pro Diagnostics' participation in the Medicare program.

    **C.**    **Billing Codes**

22. To receive reimbursement from Medicare for certain services, providers bill Medicare Common Procedural Terminology ("CPT") Code 87637 for Respiratory Pathogen Panel Testing ("RPPT"), and CPT Code 87913 for Genotype Analysis from a patient with confirmed severe acute respiratory syndrome coronavirus 2 ("Covid Genotype Analysis").

**II.**    **Facts Establishing Basis for Forfeiture**

23. Pro Diagnostics obtained the funds in the **Subject Account** through the Medicare program by billing Medicare fraudulently for reimbursement for RPPT and Covid Genotype Analysis tests, which services were never provided.

    **A.**    **Analysis of Medicare Claims Data**

24. In approximately December 2023, a law enforcement support agency

6

detected an extraordinary spike in billing for RPPT and Covid Genotype Analysis from Pro Diagnostics. Medicare data obtained during the course of the investigation on December 15, 2023, revealed Pro Diagnostics, located in Bridgeview, Illinois, billed approximately 48,552 claims to the Medicare program on December 6, 2023, followed by approximately 35,585 claims on December 7, 2023, based upon purported provision of RPPT and Covid Genotype Analysis tests.

25. As a result of the submitted claims, Medicare had been scheduled to pay $7,500,455.02 to Pro Diagnostics for the RPPT claims, and $4,971,572.50 to Pro Diagnostics for the Covid Genotype Analysis claims.

26. Over 40% of the Medicare beneficiaries for whom Pro Diagnostics billed Medicare reside outside of the State of Illinois, in states such as New York, California, Florida, Georgia, Colorado, and Hawaii. Law enforcement agents have been unable to locate any publicly available information indicating that Pro Diagnostics has a physical presence outside of its Bridgeview, Illinois, location.

27. It is unlikely that a business with no physical presence outside the State of Illinois is conducting Respiratory Pathogen Panel Testing and Covid Genotype Analysis tests on such a large scale throughout the United States.

28. Additionally, 100% of the submitted claims listed a single ordering physician, Physician 1, based in Berwyn, Illinois. Law enforcement officers interviewed Physician 1 on December 15, 2023. Physician 1 confirmed s/he is employed by a regional academic health system located in the Northern District of Illinois working principally at a hospital in Berwyn, Illinois. Physician 1 stated s/he

7

has never ordered RPPT or Covid Genotype Analysis tests because those tests would be ordered by the hospital's emergency room physicians. When asked if it was possible s/he ordered between forty and fifty thousand RPPT tests, Physician 1 expressed concern that her/his professional unique medical identifying information had been compromised. Further, Physician 1 stated s/he has no professional or financial relationship with any medical providers outside of his/her current employer.

29. Furthermore, the claims submitted to Medicare by Pro Diagnostics on or about December 6, 2023, and December 7, 2023, were backdated by many months, listing purported service dates between May 2023 and July 2023, prior to the company's change in ownership on or about November 29, 2023.

30. Billing eight to ten months after the purported date of service for such a large number of beneficiaries is extraordinarily uncommon and indicative of fraud.

### B. Medicare Beneficiary Complaints

31. Between approximately December 11, 2023, and February 14, 2024, Medicare received approximately 175 complaints from Medicare beneficiaries relating to Pro Diagnostics.

32. Although investigators have not yet interviewed all of the beneficiaries, the complaints have been preliminarily reviewed and categorized by the government.

33. Of the 175 complaints, 135 have been categorized as "Did Not Receive Services," 23 have been categorized as "Do Not Know Provider," and 5 have been categorized as "Suspected Identity Theft."

8

34. After detecting the spike in billing, a law enforcement support agency interviewed several Medicare beneficiaries to determine if they received the services billed by Pro Diagnostics after its ownership change, but purportedly provided by Pro Diagnostics prior to its ownership change.

a) On December 14, 2023, Medicare beneficiary ES stated the claims for RPPT testing were not performed on him/her, and further ES had not had any RPPT testing from any provider recently. Further, ES had never heard of Physician 1. ES resides in Aurora, Illinois and Pro Diagnostics submitted claims for reimbursement to Medicare purporting to have performed RPPT testing for ES on May 10, May 29, and July 5, 2023. Pro Diagnostics sought $2,000 in payment for the supposed services.

b) On December 14, 2023, Medicare beneficiary AR stated s/he keeps very good records of all doctors' appointments. AR reported receiving no RPPT testing in June or July 2023. AR resides in Merrick, New York and had never heard of RT PCR Near Me located near Chicago, Illinois. Pro Diagnostics submitted claims for reimbursement to Medicare purporting to have performed RPPT testing on AR on June 1, June 4, July 1, and July 4, 2023. Pro Diagnostics sought $2,000 in payment for the supposed services.

c) On December 14, 2023, Medicare beneficiary MD stated s/he had not had any RPPT tests performed in the year 2023, had never heard of Physician 1, and had never heard of a company called Pro Diagnostics. MD resides in Liberty, NY. Pro Diagnostics submitted claims for reimbursement to Medicare purporting to have

performed RPPT testing on MD on May 30, June 3, June 10, and July 3, 2023. Pro Diagnostics sought $2,000 in payment for the supposed services.

        d)        On December 14, 2023, Medicare beneficiary MS stated, in text messages, that s/he did not know who Physician 1 was and did not know of a company called Pro Diagnostics. MS resides in Valley Stream, New York. Pro Diagnostics submitted claims for reimbursement to Medicare purporting to have performed RPPT testing on MS on June 2, June 4, July 2, and July 4, 2023. Pro Diagnostics sought $2,000 in payment for the supposed services.

        e)        On December 14, 2023, Medicare beneficiary SR stated s/he had received no Covid related testing and had no medical appointments in June or July 2023. Further, SR had never heard of a company called RT PCR Test Near Me. SR resides in Forest Hills, New York. Pro Diagnostics submitted claims for reimbursement to Medicare claiming to have performed RPPT testing on SR on June 2, June 4, July 2, and July 4, 2023. Pro Diagnostics sought $2,000 in payment for the supposed services.

        **C.**        **Pro Diagnostics Site Visit**

35.        On December 18, 2023, law enforcement agents conducted a site visit at the practice location of Pro Diagnostics. The agents observed the business was not open and no individuals appeared to be present in its interior. Stickers on the exterior door indicated that package delivery service had tried unsuccessfully to make a delivery to the business.

36. During the site visit, law enforcement agents spoke with the receptionist at a neighboring business in the strip mall in which Pro Diagnostics is located. When asked if Pro Diagnostics had been open recently, the receptionist replied to the agents that it had been open the previous Friday, but that s/he had not otherwise seen them open. The receptionist added that the business is open occasionally, but not regularly, and s/he had not seen much activity at the business.

D. **Billing for Deceased Beneficiaries**

37. Analysis of Medicare data reveals Pro Diagnostics submitted a large number of claims for deceased beneficiaries. In summary, Pro Diagnostics billed Medicare for testing of 4,165 Medicare beneficiaries after their date of death for a total of 8,062 services, according to Medicare's records. The chart below provides further detail, revealing how much time passed between the Medicare beneficiaries' date of death, as reflected in Medicare records, and the purported testing by Pro Diagnostics of a sample from the beneficiary for either RPPT or Covid Genotype Analysis:

| Time Frame | No. of Billed Services |
|---|---|
| Date of Death (DOD) less than 180 days from Date of Service (DOS) | 2,793 |
| DOD between 180 days and one year from DOS | 1,693 |
| DOD greater than one year but less than 2 years from DOS | 2,022 |
| DOD greater than 2 years from DOS | 1,554 |

38. Medicare providers who repeatedly bill for services purportedly

delivered to dead beneficiaries are often using Medicare beneficiary information that has been purchased or unlawfully transferred, rather than collected in the ordinary course of the provision of bona fide services to beneficiaries.

### E. Lack of Identifiable Business Expenses

39. Based upon review of bank records for Pro Diagnostics, there is no indication that Pro Diagnostics had business expenses that one would expect for a company that provided thousands of RPPT or Covid Genotype testing services between approximately May 2023 and July 2023 to Medicare beneficiaries located throughout the United States as described in paragraphs 24 – 29.

40. Records obtained from JP Morgan Chase identified three accounts tied to Wahed and Pro Diagnostics, the **Subject Account,** an account ending in 0152 and an account ending in 0137. The **Subject Account** was open on October 17, 2023, and the other two accounts were open on November 8, 2023. All three accounts were open at least three months after the purported provision of the bulk of RPPT and Covid Genotype testing billed by Pro Diagnostics to Medicare and after Wahed became owner of Pro Diagnostics based on Medicare and Illinois Secretary of State records.

41. During that time period the accounts were open, there is no evidence of payment for the regular and sizeable expenses that one would expect for a business operating as a large scale provider of RPPT or Covid Genotype to Medicare beneficiaries, such as for payroll (or to a payroll service provider); for procurement of testing equipment and supplies; for delivery of test results; or payments to Medicare

billers, from the **Subject Account** or from any other financial account that the government has identified associated with Pro Diagnostics.

### F.     Tracing the Funds Sought for Forfeiture

42.     As noted above in paragraph 14, Pro Diagnostics requested that Medicare direct payment for its services to the **Subject Account**. According to Chase Bank, account xxxxx9331 has one signatory, Wahed, who was designated as the sole signatory for the account on or about October 17, 2023.

43.     The funds sought for forfeiture in the **Subject Account** were obtained from Medicare and represent the proceeds of billing Medicare fraudulently for purported performance of RPPT and Covid Genotype Analysis procedures.

44.     The funds sought for forfeiture were seized by law enforcement from the **Subject Account** pursuant to a seizure warrant issued on or about December 29, 2023, by a magistrate judge in the Northern District of Illinois.

## Conclusion

For the reasons stated herein and in the attached affidavit, incorporated by reference herein, the foregoing defendant property was derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and/or 1347, and therefore is subject to forfeiture and condemnation pursuant to Title 18, United States Code, Section 981(a)(1)(C).

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1) That process issue for an arrest warrant *in rem* for the defendant property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2) That due notice be given to all parties to appear and show cause why forfeiture of the defendant property to the United States in accordance with the claims herein set forth should not be decreed;

3) That this Court enter a judgment of forfeiture for the defendant property to the United States; and

4) That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

                                                Respectfully submitted,

                                                MORRIS PASQUAL
                                                Acting United States Attorney
                                                Northern District of Illinois

                                     By:    */s/ Brian Hayes*
                                                BRIAN HAYES
                                                Assistant United States Attorney
                                                219 South Dearborn., Rm. 500
                                                Chicago, Illinois 60604
                                                (312) 353-5300

Dated:        February 27, 2024

NORTHERN DISTRIT OF ILLINOIS )
                                                  ) SS
COUNTY OF COOK                 )

## VERIFICATION

I, Travis L. Fannin, being duly sworn, upon oath, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for approximately 4 years. My duties and responsibilities as a Special Agent with FBI include conducting criminal investigations of individuals and organizations that have violated federal laws, including violations of Title 18, United States Code 1347 (health care fraud) and Title 18, United States Code 1349 (conspiracy to commit health care fraud). I also investigate allegations of fraud, waste, and abuse in connection with federal and state health care programs, including Medicare and Medicaid. I have received specialized training and participated in numerous health care fraud investigations. I have participated in the execution of multiple federal search warrants and arrests.

2. I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief based upon my own personal knowledge as well as information I have received from other agents, persons and documents, and it does not include each and every fact known to me concerning this investigation.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 2/26/2024

TRAVIS L. FANNIN, Special Agent
Federal Bureau of Investigation

2